UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TONY BURBANK                                        CIVIL ACTION

VERSUS                                              NO. 06-2121

N. BURL CAIN, WARDEN                                SECTION "C" (1)

## ORDER AND REASONS

This matter comes before the Court on motion for stay of order granting habeas corpus relief pending appeal filed by Burl Cain.  Tony Burbank was convicted in 2000 following a jury trial in the Orleans Parish Criminal District Court of two counts of first degree murder.  After exhausting available state remedies, he filed a petition with this Court for habeas corpus relief, claiming that his due process and fair trial rights were violated.  This Court granted relief, setting aside his conviction and sentence, and ordering that the state either retry him or dismiss the charges within 120 days.  Rec. Doc. 16.  Having reviewed the record, the memoranda of counsel and the law, the Court has determined that the motion for stay should be DENIED for the following reasons.

The determination whether to permit a stay pending the appeal of a decision granting habeas relief is governed by the standard set forth in *Hilton v. Braunskill*, 481 U.S. 770 (1987).

The Court in *Hilton* recognized that Fed. R. App. P. 23(c), which applies in such cases, creates a presumption of release from custody, but that such a presumption may be overcome if a judge "otherwise orders." *Hilton*, 481 U.S. at 774.   The Supreme Court further noted that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court, *Id*. at 775, which this Court has done by affording the district attorney 120 days to retry the petitioner.

In addition to the language of Rule 23 itself, the decision as to whether to grant a stay should also be guided by the general rules governing civil stays, Fed.R.Civ.P. 62 and Fed.R.App.P. 8, regulated by the following four factors:

(1)     whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2)     whether the applicant will be irreparably injured absent a stay;

(3)     whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4)     where the public interest lies.

*Hilton*, 481 U.S. at 776.   The presumption in favor of enlargement of the petitioner may be overcome if these traditional stay factors "tip the balance against it." *Id*. at 777.

In addition to these traditional stay factors, the Supreme Court directed that other factors be taken into consideration: the possibility of flight; the risk that a prisoner will pose a danger to the public if released, if the State establishes such a risk; and the state's interest in continuing custody and rehabilitation pending a final determination of the case on appeal. *Id*.   This last

interest is "strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id*. The final factor to be considered is the interest of the habeas petitioner in his release pending appeal, which is "always substantial" and strongest when other factors are weakest. *Id*.

<u>**Application of the Stay Factors**</u>

**(1)     Whether the stay applicant has made a strong showing that he is likely to succeed on the merits.**

This Court does not agree with the state's argument that it has a strong likelihood of success on appeal.  This Court found that there were two significant errors at petitioner's original trial, in agreement with the Louisiana Supreme Court.  The sole issue before this Court was whether or not these errors could be considered harmless.  The Court considered these two errors, the trial court's refusal to allow the defendant to cross-examine the state's major witness regarding her potential bias arising from her pending criminal charges, and its refusal to allow certain testimonial evidence of this same witness' prior inconsistent statement, at some length. The Court applied the *Brecht* standard to determine whether the constitutional errors had a "substantial and injurious effect or influence on the jury's verdict,"  *Brecht v. Anderson*, 507 U.S. 619, 623 (1993),  and concluded that the petitioner was entitled to relief.

At trial, the state's charges against Tony Burbank for the murders of Jeffrey Jackson and Larry Welch rested almost entirely on the testimony of one witness, Cassandra Scott.  There was

no corroborating witnesses, physical evidence of any kind, confession,  recovery of the weapon used in the shootings or its connection to the petitioner, crime scene fingerprints, or DNA evidence – there was "no other substantial evidence connecting petitioner to the crimes."  Rec. Doc. 16, 06-2121.  Thus the state's case relied almost entirely on the jury's finding Scott to be credible, and consequently, much of the defense was premised on undermining her credibility. Despite the central importance of Ms. Scott's credibility, the trial court twice prevented the defense from confronting her or challenging her testimony via another witness, in meaningful ways.  The jury was thus prevented from considering all the necessary details regarding Ms. Scott's credibility.

After considering all the circumstances and facts of the case, the Court found that these errors did have a substantial and injurious effect or influence on the jury's verdict.  The Supreme Court refined the *Brecht* standard in *O'Neal v. McAninch*, 513 U.S. 432 (1995), holding that where a federal habeas court reviewing a state court error for harmlessness is in "grave doubt" about whether or not such error had a substantial and  injurious effect or influence on the jury's verdict, the petitioner must win.  *Id.* at 436.[1]  The present case was not such a "close call";[2] this Court did not find it necessary to resort to *O'Neal* to resolve the question of harmlessness.[3]   In fact, this Court stated that "it strains credulity to think the jury's verdict would not have been affected had they been" provided with the additional evidence regarding Ms. Scott's potential

---

[1] *See also* Tucker v. Johnson, 242 F.3d 617, 629 (5th Cir. 2001), *quoting* Woods v. Johnson, 75 F.3d 1017 (5th Cir. 1996).

[2] Rec. Doc. 16, at 11.

[3] *Id.*

motives in testifying, or that she may have committed perjury.[4]

 The state, in arguing that it is likely to succeed on appeal, suggests that *Brecht* is no longer the appropriate standard, post-AEDPA,[5] for habeas court review of state court errors for harmlessness.  Instead, the state argues that the Fifth Circuit will apply the standards set forth in 28 U.S.C. § 2254,[6] and that as a result, it "is highly likely ... [to] prevail in [its] appeal."  Rec. Doc. 25, at 2.   It is true that the Fifth Circuit had continued, for a time, to "question *Brecht*'s applicability post-AEDPA," *see*, *e.g.* Robertson v. Cain, 324 F.3d 297, 305 (5th Cir. 2003); Garcia v. Quarterman, 454 F.3d 441, 447 n.10 (5th Cir. 2006), *and* Tucker v. Johnson 242 F.3d 617, 629 n.16 (5th Cir. 2001), thus joining many other circuits in general uncertainty about *Brecht*.[7]  It is also true, however, that the Fifth Circuit has continued to apply the *Brecht* standard to cases such as this.  *See* Corwin v. Johnson, 150 F.3d 467, 476-77 (5th Cir. 1998); *see also* *Tucker*,  242 F.3d at 628-29.   The state has never more than alluded to this argument at any

---

[4] *Id*. at 17.

[5] Antiterrorism and Effective Death Penalty Act of 1996. Pub.L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

[6] The standard that would be relevant in this case is set forth in 28 U.S.C. § 2254(d)(1): "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"
 The standard (with minor variations) that certain circuits have arrived at as appropriate in cases such as this post-AEDPA, then, is a combination of (d)(1) and the "clearly established Federal law, as determined by the Supreme Court" on the issue of federal habeas review of constitutional errors in state criminal proceedings for harmlessness, Chapman v. California, 386 U.S. 18 (1967). *See infra* note 6.  *Chapman* holds that on direct review of an error in a state criminal proceeding by a higher state court, the prosecution must prove that the error was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24.  The combination, therefore, would require a federal habeas court to  determine whether a state court's determination that an error was harmless beyond-a-reasonable-doubt was unreasonable.

[7] *See*, *e.g.* Eddelman v. McKee, 471 F.3d 576, 582-83 (6th Cir. 2006) (discussing the state of the law across the circuits as it stood on this issue in the year 2006).

point before this Court, and has never actually attempted to apply an alternative standard to the

facts of this case, let alone argue why under such a standard the state would be "highly likely" to

succeed.  It is far from clear that the alternative standards applied in other circuits would lead to

an outcome more favorable to the state; in fact, the Supreme Court has described the *Brecht*

standard as the "more forgiving" standard of review to state courts when compared to the

suggested *Chapman* plus AEDPA standard.  *Fry v. Pliler*, -- U.S.--, 127 S.Ct. 2321, 2325

(2007).[8]   In any event, any question about the appropriate standard has now been clearly

answered by the Supreme Court in *Fry*, decided on June 11, 2007.  The Court held that "in §

2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-

court proceeding under the 'substantial and injurious effect' standard set forth in *Brecht*, whether

or not the state appellate court recognized the error and reviewed it for harmlessness under the

---

[8] In addition to the Supreme Court, many courts, including the Fifth Circuit, have considered the *Chapman* plus AEDPA standard to be more stringent, or less deferential to the state process, than *Brecht*.  *Robertson*, 324 F.3d at 307 n.5 (noting that the "*Chapman* standard is supposed to be more rigorous and less deferential to the state court than the *Brecht* standard..."); Eddelman v. McKee, 471 F.3d 576, 583 n.2 (6th Cir.2006) (stating that "the set of errors that are not harmless under the *Brecht* standard is a lesser included subset of the set of errors that are not harmless under the standard of *Chapman* plus AEDPA deference"), *but cf*. Anderson v. Cowan, 227 F.3d 893, 898 n.3 (7th Cir. 2000) (assuming that *Brecht* standard was more generous to the petitioner than the AEDPA); *Tucker*, 242 F.3d at 629 n.16 (same).

Accordingly, after concluding that Burbank's claims regarding the errors in his trial merited relief under *Brecht*, this Court did not find it necessary to reach the question of whether the Louisiana Fourth Circuit Court of Appeal's harmless-error determination resulted from an unreasonable application of the *Chapman* standard. However, this Court notes it did find it "strain[ed] credulity" to think that the trial errors did not affect the jury's verdict.  In addition, the Louisiana appellate court made its harmless determination based in part on an outright misreading or misunderstanding of the record: the Fourth Circuit stated that the "defendant also had Ms. Scott admit on cross-examination that she ... could possibly be sentenced to serve twenty years to life in prison," State v. Burbank, 893 So.2d 109, 111 (La App. 4th Cir. 2004), and that "Ms. Scott acknowledged that she ... could be sentenced from twenty years to life imprisonment," *Id*. at 113, and that "the defendant was allowed to introduce evidence of ...the fact that she could be sentenced to life imprisonment." *Id*.  Each of these statements is simply untrue; Ms. Scott did not admit she could be sentenced from twenty years to life and the defendant was not allowed to introduce evidence of this fact either.  In fact, when asked if she knew she could be so sentenced, she stated: "No, I don't." *Defense counsel's question* alone is not *evidence*.  Trial transcript, Rec. Doc. 1, Exhibit A, at 133.  It would be hard to conclude that a determination based in large part on a serious factual misreading of a key part of the trial record could be *reason*-ed, or "reasonable."

'harmless beyond a reasonable doubt standard' set forth in *Chapman*." *Id*. at 2328.  *See also*

*Gongora v. Quarterman*, 2007 WL 2192504, *4 (N.D. Tex) (applying *Brecht* standard and citing

to *Fry*); *Vasquez v. Jones*, 2007 WL 2176985, *6-7 (6th Cir. (Mich.)) (finding that *Fry* overruled

Sixth Circuit precedent that had applied "*Chapman* plus AEDPA deference.").

It thus appears that the state's main argument for why it is "highly likely" to succeed on

appeal is outdated.  This Court found the trial errors in this case to be severe.   It then considered

at length whether they had a substantial and injurious effect or influence on the jury's verdict,

applying *Brecht*, and found that they did.  The state's argument that there is a significant

question of law to be settled on appeal, concerning the appropriate standard to apply in such

cases, no longer has merit after *Fry*.  As a result, the state has made no showing it is likely to

succeed on appeal, let alone the *strong* showing this Court should consider as one factor in

determining whether or not to grant a stay.


**(2)      Whether the stay applicant will be irreparably injured absent a stay.**

The Court notes that is has utilized its discretion to delay the release of the petitioner in

order to provide the State an opportunity to correct the constitutional violation found by the

court, *Hilton*, 481 U.S. 775, which this Court has done by affording the district attorney 120 days

to retry the petitioner.  This is not an insignificant period of time.  The state, in its motion, makes

the conclusory assertion that "[g]iven the age and complexity of the case, it is unlikely that such

a trial could be accomplished within that time frame."[9]  The state, however, has not provided any

_____

[9] Memorandum in Support, *supra* note 8, at 3.

evidence of any efforts made toward trial, or even of intent thereof, since the order was issued.

In addition, the state notes that "there exists the possibility of a verdict other than Guilty as Charged" at retrial, which it argues would irreparably impact its ability to exercise its appellate rights in this case.[10]  The possibility that Burbank may be found *innocent* at retrial, while real, given the fatally flawed nature of the first trial, cannot seriously be said to weigh in favor of the state (and any weight it does have would tend to undermine the state's arguments in defense of the original trial under the "likelihood of success" factor discussed above).  The state further argues that the effort and expense of another trial would be irreversibly lost should its appeal prove successful.  These arguments can be made as a matter of course in any case where habeas corpus relief has been granted and the state is appealing, the only circumstance where a stay governed by *Hilton* would be requested, yet *Hilton* clearly recognized the presumption in favor of release in this circumstance.  481 U.S. at 774.  This Court does not find conclusory, matter-of-course arguments like this to weigh in favor of the state in this case.

**(3)    Whether issuance of the stay will substantially injure the other parties interested in the proceeding.**

Burbank has been incarcerated for nearly ten years as a result of this conviction.  The state argues that in light of this lengthy period, the "relatively brief period that will elapse while this appeal is pending is of little moment" compared to other factors.[11]  The Court does not agree,

---

[10] *Id.*

[11] *Id.*

and finds this flippant dismissal of the time Burbank has spent in prison as a result of his fatally-flawed trial to be disturbing.  The U.S. Supreme Court considers a successful habeas petitioner's interest in release to be "always substantial," and strongest where other factors, in particular the state's likelihood of success on appeal or demonstration of a substantial case on the merits, are weakest.  *Id*. at 777-778.   As discussed above, this Court does not find that the state has made a showing of a strong likelihood of success on appeal.  Neither does it feel the state can demonstrate a substantial case on the merits - the state produced no substantial evidence to corroborate Scott's testimony at the original trial.  As these factors are weak in this case, the Court feels this factor weighs heavily in favor of Burbank.

**(4)     The Public Interest.**

At the outset, the Court notes that the public has a significant interest in the release of a petitioner a court has found to be incarcerated because of significant failures in a state's criminal justice system.  The state argues that the public has a great interest in preventing the release of a convicted killer pending appeal, because of his dangerousness to the public and witnesses, and the risk of flight.  The state is correct in noting that a court is not prohibited from considering, along with the factors discussed above, the dangerousness of a petitioner when considering whether to stay his release pending appeal.  *Hilton*, 481 U.S. at 779.  But for the Court to consider the dangerousness to the public, the state must *establish* such a risk.  *Id*. at 777.  There is no blanket exception to the presumption of release for those successful habeas petitioners originally convicted of murder.  As this Court has concluded, Burbank's conviction was fatally-

9

flawed, and was based on no meaningful corroborative evidence in addition to the testimony of Scott.  The state has offered nothing beyond its conclusory statements that would show defendant poses a risk to the public or witnesses.

The single factor that this Court finds to be in favor of the state and against the presumption of release concerns the length of the sentence remaining for the petitioner, who was sentenced to a life term.   However, the Court finds that, with this and no more, the state has not sufficiently shown that the presumption favoring release is overcome in this case and that a stay pending appeal is appropriate.

Accordingly,

IT IS ORDERED that the motion for stay of order granting habeas corpus relief filed by the respondent Burl Cain is hereby DENIED.

 New Orleans, Louisiana, this 24th day of September, 2007.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE